*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOMESTIC UNIFORM RENTAL,

       Plaintiff-Appellee,

v

RIVERSBEND REHABILITATION and
RIVERSBEND REHABILITATION, INC.,

       Defendants-Appellants,

and

DEVIN CRAVEN, LORI REVETTE, also known
as LORI LEN, and MANDY WILSON,

       Defendants.

UNPUBLISHED
November 19, 2019

No. 344669
Oakland Circuit Court
LC No. 2017-160206-CB

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

This case presents an appeal from a circuit-court decision confirming an arbitration award. Appellants argue that the circuit court erroneously refused to vacate the arbitration award because (1) the arbitrator refused to postpone the hearing upon sufficient cause for postponement, and (2) the arbitrator exceeded his powers. Finding no merit in these arguments, we affirm.

## I. BACKGROUND

This case involves both corporate defendants and individual defendants. To distinguish between the two types of defendants, this opinion will refer to defendants Devin Craven, Lori Revette (also known as Lori Len), and Mandy Wilson as the "individual defendants" and will refer to defendants Riversbend Rehabilitation and Riversbend Rehabilitation, Inc. as the "corporate defendants." Furthermore, this opinion will refer to Revette by that name, even though she is often referred to as either Revette or Len in the record below.

This case arises from a series of eight contracts for the rental and delivery of floor mats to a business with multiple locations. The contracts' execution dates range from January 2001 through February 2017. Each of the contracts is a single-page-form contract with printing on both sides. All of the contracts were signed by employees of the corporate defendants. In the arbitration proceedings and in the circuit court, the corporate defendants argued that their employees lacked authority to sign the contracts on their behalf.

The contracts each contained the following agreement to arbitrate:

15. In the event of any controversy or claim in excess of $10,000.00 arising out of or relating to this agreement, including but not limited to questions regarding the authority of the persons who have executed this agreement and the enforcement of any guarantee that is related to this agreement, the question, controversy or dispute shall be submitted to and settled by arbitration to be held in the city closest to the city in which the branch office of the Company which serves the Customer is located. Said arbitration shall be held in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association except any rules which require the parties to use the American Arbitration Association as their sole Arbitration Administrator. Judgment upon and [sic] award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The filing party may use either court or arbitration where the claim is less than $10,000.00. Venue for any court proceeding shall be in the county of the Company's branch office servicing the Customer. The judge or arbitrator shall include as part of the award all costs including reasonable attorney fees and arbitration fees of the non-breaching party where it is determined that one of the parties has breached the Agreement.

A dispute regarding the contracts arose between the parties, and in 2017, plaintiff filed a demand for arbitration with the American Arbitration Association (AAA). Plaintiff subsequently filed a complaint in the Oakland Circuit Court, naming the individual and corporate defendants. Plaintiff alleged that it and defendants were parties to a series of contracts, that defendants breached each of those contracts, and that plaintiff suffered compensable damages as a result of defendants' breach. Plaintiff further alleged that each of the contracts contained an arbitration clause, that plaintiff had demanded arbitration of the parties' dispute, and that defendants had wrongfully refused to participate in arbitration. Plaintiff sought an order compelling arbitration of the dispute, and confirming any arbitration award that might be entered in plaintiff's favor.

Plaintiff then filed a motion in the circuit court to compel arbitration. Plaintiff alleged that defendants had appeared in the arbitration proceedings through counsel, and that defendants had taken the position that they were not subject to the jurisdiction of the AAA or the arbitrator. Plaintiff took the position that all eight contracts contained "broadly drafted written arbitration agreements" and that "all claims, counter-claims, defenses and disputes with respect to the parties' rights under the Contracts at issue must be determined exclusively in Arbitration." Plaintiff therefore requested that the circuit court issue an order compelling defendants to arbitration under MCR 3.602 and MCL 691.1681 *et seq*.

Defendants opposed the motion to compel arbitration. In their circuit-court filing, defendants admitted that they advised the AAA "that they will not be participating in arbitration." Although defendants admitted that the contracts "contain the referenced language" (i.e. the arbitration clause), defendants nonetheless took the position that the individual defendants who signed the documents were not themselves parties to the contracts, and therefore were not parties "to any agreement requiring arbitration."

On August 30, 2017, the circuit court entered an order granting in part and denying in part plaintiff's motion to compel arbitration. The circuit court stated, "Plaintiff's motion to compel arbitration is granted as to the Defendant Companies only. The Court hereby orders that the remainder of the case shall be stayed pending the outcome of arbitration." Thus, in August 2017, the circuit court compelled only the corporate defendants to participate in arbitration.

On October 24, 2017, plaintiff filed a motion to lift the stay regarding the individual defendants. Plaintiff alleged that, in the course of arbitration proceedings, the corporate defendants claimed "that some of the Contracts at issue may have been executed by these Defendants in their individual capacities." Therefore, plaintiff argued that the participation of individual defendants Revette and Wilson in the arbitration proceedings "may be necessary for complete relief," and plaintiff sought an order compelling those individual defendants to participate in the arbitration.[1]

Up to this point in the case, Attorney Timothy R. McLeod had represented all defendants. On October 25, 2017, Attorney McLeod withdrew as counsel for the individual defendants, and Attorney Joseph H. Luplow filed an appearance on their behalf. The individual defendants then opposed the motion to lift the stay as to plaintiff's claims against them, arguing that the circuit court had "previously decided that these Defendants were employees of Riversbend and as such had no privity of Contract with Plaintiff," and arguing that they were not parties to the contracts in question.

On October 30, 2017, the circuit court issued an opinion and order denying plaintiff's motion to lift the stay regarding the individual defendants. In that order, the circuit court acknowledged, "Plaintiff is effectively requesting the Court to order the individual Defendants into arbitration." The circuit court recounted plaintiff's earlier motion to compel arbitration and explained, "Plaintiff's prior motion sought an order compelling arbitration of all disputes concerning all Defendants." The circuit court further explained:

> During oral argument on Plaintiff's previous motion on August 30, 2017, Defendants' counsel posed the question to the Court—are the individual Defendants who signed as office managers or receptionists subject to the

---

[1] The motion to lift the stay did not address defendant Craven. Although the circuit court never compelled Craven to participate in the arbitration proceedings, this opinion will continue to refer to the individual defendants as a group because the parties' briefs do not distinguish between Craven and the other individual defendants.

arbitration agreements? In consideration of the parties' respective arguments and upon review of the Domestic Uniform Rental Agreements, the Court answered the question in the negative to resolve that particular motion. While the individual Defendants signed their names to the respective rental agreements, they signed in the capacity of an office manager and/or receptionist. The individual Defendants are not parties to the Domestic Uniform Rental Agreements and therefore, they are not subject to arbitration.

Accordingly, the Court granted Plaintiff's request to compel arbitration as to the Defendant companies only and stayed the remainder of the case pending the outcome of the arbitration.

The circuit court concluded that plaintiff's motion to lift the stay was "actually a disguised motion for reconsideration" of the August 30, 2017 order compelling the corporate defendants to arbitration but staying the matter as to the individual defendants. Treating the motion as one for reconsideration of its earlier decision, the circuit court denied the motion as untimely under MCR 2.119(F)(1). Thus, as of October 30, 2017, the circuit court had compelled only the corporate defendants to participate in arbitration.

On November 1, 2017, plaintiff filed a motion for reconsideration in the circuit court, arguing that a change in circumstances had occurred and new information had come to light that warranted reconsideration of the circuit court's decision. Plaintiff argued:

3. Since entry of the Court's August 30, 2017 Order, it has become clear that participation of individual Defendants Lori Len; Lori Revette; and Mandy Wilson may be necessary for complete relief in the underlying arbitration proceedings, as Riversbend Rehabilitation now claims that these Defendants may have executed some of the Contracts at issue in their individual capacities. Plaintiff disputes Defendants' allegations. However, if Defendants' allegations are true, then each of the individual Defendants would be primarily liable and a necessary party, subject to the arbitration provisions of each of the Contracts (as opposed to merely personal guarantors under separate agreements, as was presented to the Court during the August 30, 2017 hearing).

4. Defendants' newly raised allegations were made for the first time during an October 19, 2017 preliminary arbitration hearing, and Plaintiff promptly responded by filing its Motion to Lift Stay and Compel Arbitration as to Individual Defendants Lori Len; Lori Revette; and Mandy Wilson.

Plaintiff therefore argued that its motion to lift the stay was not truly a motion for reconsideration, given that the motion "was visiting completely new issues not previously raised or addressed, as a result of new allegations raised by Defendants for the first time, following the Court's August 30, 2017 Order." Plaintiff requested that the circuit court reverse its October 30, 2017 order and compel arbitration as to individual defendants Revette and Wilson.

On November 3, 2017, the individual defendants filed a response opposing plaintiff's motion. Revette and Wilson continued to argue that they were not parties to the contracts, but

that they signed the contracts on behalf of the corporate defendants.  In addition, Revette and Wilson argued that "the Corporate Defendants have NOT asserted the individual Defendants signed the service agreements in their individual capacity."

On November 15, 2017, the circuit court entered an order granting in part and denying in part plaintiff's motion for reconsideration, stating: "If a defense is raised that the individuals did not have authority to sign, the individuals shall be subject to the arbitration."  Thus, as of November 15, 2017, the circuit court had only ordered Revette and Wilson to participate in arbitration if the corporate defendants raised the defense that those individual defendants lacked authority to sign contracts on behalf of their employer.

The corporate defendants did take the position that the individual defendants lacked authority to sign the contracts, arguing in the circuit court that the individual defendants "did not have [corporate] authority to execute" the contracts and that the individual defendants had no "idea that these contracts included such [a] thing as an arbitration clause."  The corporate defendants also argued, "[T]he entire defense here was that the plaintiff had these contracts signed . . . by office—low-level office staff that they knew were not authorized, in fact, were not authorized to execute those agreements, okay?  So, that was the defense."  By interposing this argument, the corporate defendants triggered the circuit court's decision that "the individuals shall be subject to the arbitration."

On November 20, 2017, five days after the circuit court compelled the individual defendants to arbitration, the arbitrator asked the parties whether they needed additional time to prepare for the arbitration hearing.  The arbitrator stated:

> If, in light of the Court's Order additional pleadings need be filed, whether Amendments, new claims, counter claims, affirmative defenses, etc., such that the present schedule of events is no longer practicable, the parties shall submit a revised proposed 2nd Preliminary Management and Scheduling Order setting forth, in reasonable detail, proposed dates and times for all matters addressed by the first order, any and all new issues and proceedings which will need to be addressed for purposes of pleadings, Discovery, Motions, [specifically] all matters which will need to be addressed prior to the evidentiary hearing.

In response, counsel for Revette and Wilson sent the arbitrator an email stating that he needed "additional time to obtain new pleadings from Plaintiff regarding the individual defendants, to conduct discovery, and to file responsive pleadings."  Counsel for the corporate defendants also sent an email, indicating that the schedule was no longer practical and that the attorneys would need to discuss a revised 2nd Preliminary Management and Scheduling order.  Yet, neither the corporate defendants nor the individual defendants filed a revised scheduling order with the arbitrator.

On November 29, 2017, the arbitrator issued an order to the parties stating:

> There being no requests by way of written submissions or other actions taken relative to the scheduling and time limits then [in] effect, or any issues specifically brought to the attention of the arbitrator of consequence to the

determination of this arbitration, there is no compelling reason for the schedule to be modified at the 11th hour.

On November 29, 2017, in response to the arbitrator's order declining to reschedule the arbitration hearing, counsel for the individual defendants sent a letter indicating that he wanted an adjournment. Counsel for the corporate defendants indicated that they had no objection to the individual defendants' request for an adjournment.

On December 5, 2017, the arbitrator denied the individual defendants' request for an adjournment, stating:

> Notwithstanding the arbitrator's immediate requests for information [concerning the individual defendants] which very well could have been relevant to the questions about whether or not the evidentiary hearing should be adjourned, or proceed as scheduled; Mr. Luplow waiting [sic] until the 11th hour to file anything in the nature of a motion or formal good faith request for relief, including, but not limited to pleadings in proper form to permit him to engage in discovery, but was not concerned enough to provide comments or responses when the arbitrator requested that the parties advise him as to whether the matter should be removed from the expedited proceedings track which would have resulted in consideration of the need for the parties to engage in any or additional discovery based upon the seemingly changed circumstances.

Although he denied the requested adjournment, the arbitrator "provided the individual defendants with the opportunity to assert any claims or defenses as are applicable to the facts as well as further safeguards should the individual defendants be improperly 'blind-sided' with respect to any legal, factual, or equitable arguments" at the arbitration hearing. On December 5, 2017, the individual defendants filed a motion for reconsideration of the arbitrator's refusal to adjourn the hearing. That same day, the arbitrator denied the motion for reconsideration.

On December 6, 2017, the morning of the scheduled arbitration hearing, plaintiff's counsel voluntarily dismissed all arbitrable claims against the individual defendants, and the arbitrator granted that motion over the objection of counsel for both the corporate defendants and individual defendants. Revette and Wilson, who were no longer named defendants, then declined to remain for the arbitration hearing. The corporate defendants also declined to remain for the hearing, claiming that they were "left without witnesses" because Revette and Wilson had left the hearing. Counsel for the corporate defendants conceded in the circuit court that "I removed myself before the start" of the arbitration hearing, but took the position that they were "left without the ability to defend" the arbitration and "believed that if they remained at the proceeding, they would effectively waive the right to object."

In pertinent part, the arbitrator described defendants' refusal to participate in the arbitration proceedings as follows:

> WHEREAS, prior to the Evidentiary Hearing, the Arbitrator carefully reviewed all written submissions provided to him by the American Arbitration Association, counsel of record for the parties, and Joseph H. Luplow ("Mr.

Luplow") who, in November 2017 copied the Arbitrator on an email indicating, *inter alia*, that he had been, or was being, retained to represent the three (3) Individual named Respondents, against whom arbitrable claims were dismissed (hereinafter "Dismissed Respondents");

WHEREAS, immediately prior to the start of the Evidentiary Hearing, legal counsel for Claimant, Bradley Gorman ("Mr. Gorman") and legal counsel for the Riversbend Respondent (hereinafter "Riversbend"), Timothy M. McLeod ("Mr. McLeod"), and Mr. Luplow, legal counsel for the Dismissed Respondents, (Claimant voluntarily dismissed any and all remaining arbitrable claims against the Dismissed Respondents prior to the start of the Evidentiary Hearing), engaged in lengthy discussions, *inter alia* objections to the Evidentiary Hearing going forward at the time and date scheduled, notwithstanding the Arbitrator's prior denial of various formal and informal requests included [sic] *inter alia* to delay the start of the Evidentiary Hearing, a Motion for Adjournment filed on December 5, 2017, and subsequent denial of the Motion for Reconsideration of Motion for Adjournment as late as the day prior to the date scheduled for the start of the Evidentiary Hearing;

WHEREAS, during the course of the above-referenced pre-Evidentiary Hearing decision, and over the objections of Mr. McLeod and Mr. Luplow, the Arbitrator granted Mr. Gorman's request to withdraw and/or dismiss from the arbitration all remaining arbitrable claims which Claimants had against the Dismissed Respondents; notwithstanding that there were no claims remaining against any of Mr. Luplow's clients in this arbitration, Mr. Luplow and his clients (who were present), and Mr. McLeod, counsel for Riversbend, and representatives of his client who were also present, declined to participate in the Evidentiary Hearing in any manner, leaving the Arbitrator's offices with their respective clients (amounting to all of the Dismissed Respondents and the sole remaining Respondent, Riversbend).

The arbitrator stated that the hearing continued despite the corporate and individual defendants' decision to leave, with plaintiff "presenting witnesses who testified under oath, and presenting documentary evidence which the Arbitrator admitted and considered in conjunction with the [plaintiff's] allegations and proofs, which was presented and authenticated through the testimony of the witnesses called" by plaintiff. Following plaintiff's submission of its proofs, the arbitrator closed the hearing.

The next day, the AAA contacted the arbitrator to indicate that, after the close of the evidentiary hearing, counsel for the parties had exchanged electronic communications, "some of which purported to re-assert facts, explanations, reasons, and ancillary matters relative to the non-participation of Riversbend" in the arbitration. The AAA asked the arbitrator whether he wished to reopen the hearing for purposes of reviewing the electronic communications between counsel, "in the event they offered any new or different relevant objections or arguments which had not been previously heard, considered, or addressed by the Arbitrator."

The arbitrator reopened the hearing and received copies of all the electronic-post-evidentiary-hearing communications between counsel. After reviewing all of those documents, the arbitrator determined that counsel for the corporate defendants and counsel for the individual defendants had not "raised any new, different, or previously considered facts, arguments, or issues which had not been reviewed and considered previously," and closed the hearing for the second time.

The arbitrator then awarded plaintiff: (1) $27,362.97 against the corporate defendants as damages for breach of contract; (2) $1,550.00 for the AAA's administrative fees; (3) $1,000.00 for the arbitrator's compensation; (4) $9,120.99 in attorneys fees, costs, and expenses; and (5) $541.53 in circuit court fees and expenses. All amounts owing to plaintiff were subject to interest and late fees. The arbitrator further stated that the award was "in full settlement of all claims which were alleged and pending before the Arbitrator in this matter."

On December 27, 2017, plaintiff filed a motion in the circuit court, seeking to confirm the arbitration award under MCR 3.602 and MCL 691.1702. In that motion, plaintiff represented that the arbitrator entered an award of $39,075.49 in plaintiff's favor and against Riversbend Rehabilitation, Inc. Plaintiff requested confirmation of the award, entry of a money judgment, and an award of attorneys fees and expenses. The corporate defendants filed a competing motion to vacate the arbitration award, arguing that the circuit court should vacate the award under MCL 691.1703(1), for two independent reasons: (1) the arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement; and (2) the arbitrator exceeded his powers.

The circuit court subsequently entered an opinion and order addressing both plaintiff's motion for confirmation of the arbitration award and the corporate defendants' motion to vacate the arbitration award. The circuit court reviewed the events that transpired in arbitration, and found insufficient evidence to conclude that the arbitrator erred in denying defendants' motions to adjourn the arbitration hearing. The circuit court explained:

> Based upon a review of the offered, written communications between counsel and Arbitrator Kanter as well as the arbitrator's preliminary orders, it is clear that Defendants failed to submit to the arbitrator a revised, proposed 2nd Preliminary Management and Scheduling Order that set forth proposed adjournment dates and times for the evidentiary hearing. Defendants did not provide, in reasonable detail, new issues and proceedings concerning the individual defendants that would need to be addressed prior to the evidentiary hearing. Finally, Defendants neglected to address whether the arbitration should continue as an expedited proceeding.

> In effect, Arbitrator Kanter invited the parties to submit information that would support an adjournment and removal from the expedited docket, however, his request went unanswered by Defendants. *Quite simply, Defendant Riversbend failed to comply with the arbitrator's procedural requirements in order to obtain an adjournment.* Further, Defendant Riversbend has not demonstrated to the Court that the arbitrator refused to adjourn the hearing upon a showing of sufficient cause for postponement.

\* \* \*

> For the reason that Plaintiff dismissed its claims against the individual defendants, the parties who in fact made the formal request for the adjournment, and based upon the reasoning given in the arbitrator's prior orders regarding his denial of the formal and informal adjournment requests, this Court does not find that the arbitrator exceeded his authority in this matter. The arbitrator's approval of Plaintiff's request to dismiss the individual defendants did not preclude Defendant Riversbend from advocating its position and from presenting its case by calling the individual defendants as witnesses. [Emphasis added.]

The circuit court noted that the individual defendants and their counsel, along with the corporate defendants and their counsel, "all voluntarily declined to participate in the evidentiary hearing in any manner," and that the arbitration hearing "proceeded with only Plaintiff present after the voluntary departure of Defendants from the arbitrator's office." The circuit court then concluded that there was no evidence that the arbitrator acted beyond the material terms of the contract or in contravention to controlling principles of law. Accordingly, the circuit court granted plaintiff's motion for confirmation of the arbitration award and denied defendants' cross-motion to vacate the arbitration award.

This appeal followed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

Courts have a limited role in reviewing arbitration awards. *TSP Services Inc v National-Standard, LLC*, __ Mich App __, __; __ NW2d __ (2019) (Docket No. 342530), slip op at 3. A court may not review an arbitrator's factual findings or decision on the merits, but may only review an arbitrator's decision for errors of law. *Id*. "Moreover, in determining whether there is legal error, the court cannot engage in a review of an arbitrator's mental process, but instead must review the face of the award itself." *Id*. (cleaned up). Even when an arbitrator's decision involves an error of law, such an error does not always merit subsequent court intervention:

> Where it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the new award and decision will be set aside. [*Id*. (cleaned up).]

Furthermore, this Court reviews de novo a circuit court's ruling on a motion to vacate an arbitration award. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). "This means that we review the legal issues presented without extending any deference to the trial court." *Id*. This Court also reviews de novo whether an arbitrator exceeded his authority. *Id*. at 672. "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005).

## B.  ARBITRATOR'S DENIAL OF A REQUEST FOR ADJOURNMENT

On appeal, the corporate defendants first argue that the circuit court erred in denying its motion to vacate the arbitration award under MCL 691.1703(1).  This argument is without merit.  Reviewing de novo the circuit court's decision on the corporate defendants' motion to vacate the arbitration award, we cannot say that the arbitrator refused to postpone the arbitration hearing upon a showing of sufficient cause for postponement.

The corporate defendants rely on MCL 691.1703(1), which provides that a court "shall vacate an award" made in an arbitration proceeding if the arbitrator "refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15, so as to prejudice substantially the rights of a party to the arbitration proceeding."  MCL 691.1703(1)(c).

The corporate defendants argue that the arbitrator "failed to postpone a hearing after several reasonable requests to adjourn from parties that were ordered to be included, as directed by the circuit court with jurisdiction, just weeks prior to the scheduled hearing."  The corporate defendants argue that the individual defendants submitted two requests to adjourn the arbitration proceedings, and argue that the corporate defendants made a similar request for an adjournment on the day of the arbitration hearing itself.  The corporate defendants argue that the individual defendants' requests for an adjournment were based on "such primary reasons as needed discovery, drafting of cross-claims of indemnity, depositions, etc." and that the individual defendants' "inability to conduct any discovery" was "undeniably good cause to adjourn" the arbitration hearing.

This argument is without merit.  The corporate defendants cannot stand in the shoes of the individual defendants, arguing that the arbitrator erroneously refused to grant *the individual defendants'* motion to adjourn proceedings.  The primary reason for that request to adjourn, as described by the individual defendants, was a desire to "obtain new pleadings . . . to conduct discovery, and to file responsive pleadings."  Even if this type of discovery was needed by the individual defendants, the corporate defendants failed to articulate, either below or on appeal, that they needed an adjournment for these purposes.  "Generally, persons do not have standing to assert constitutional or statutory rights on behalf of another person."  *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009).  The corporate defendants were parties to the arbitration from the beginning of the dispute, and articulated no need for additional discovery after the individual defendants were also compelled to attend the arbitration.  The corporate defendants' strategy was to argue that the individual defendants signed documents that they were not authorized to sign, and this strategy did not change once the individual defendants were compelled to participate in the arbitration.  Therefore, the corporate defendants' reliance on the arbitrator's denial of the individual defendants' motions to adjourn the arbitration hearing is without merit.

The corporate defendants also argue that they were "left without witnesses on the morning of the Hearing based on the Arbitrator's ruling just minutes prior thereto," creating "good cause to postpone the hearing as well."  The corporate defendants argue that, when the arbitrator denied the motion to adjourn on the day of the arbitration hearing, he committed clear legal error that clearly prejudiced defendants because "Any reasonable jurist would have adjourned this case for a fair hearing."

As the circuit court correctly noted, the arbitrator reviewed the parties' submissions regarding a requested adjournment of the arbitration hearing, and denied those requests. The arbitrator determined that there was "no compelling reason for the schedule to be modified at the 11th hour." This Court may not review an arbitrator's factual findings or decision on the merits, but may only review an arbitrator's decision for errors of law. Furthermore, this Court cannot engage in a review of an arbitrator's mental process, but instead must review the face of the award itself. *TSP Services*, ___ Mich App at ___; slip op at 3. Applying these standards to this case, we cannot conclude that the arbitrator refused to adjourn the arbitration hearing "upon a showing of sufficient cause for postponement," as described in MCL 691.1703(1).

Moreover, even if the arbitrator erred in declining to grant an adjournment, we cannot conclude that, "but for such error, a substantially different award must have been made." *Id*. The corporate defendants have wholly failed to articulate how the arbitrator's decision granting plaintiff relief on the parties' contract dispute would have been different if the arbitrator had adjourned the arbitration hearing as requested.

## C. ARBITRATOR EXCEEDING HIS POWERS

The corporate defendants next argue that the circuit court erred in denying their motion to vacate the arbitration award under MCL 691.1703(1)(d) because the arbitrator "exceeded the arbitrator's powers." This argument is also without merit.

"An arbitrator may exceed his or her powers by making a material error of law that substantially affects the outcome of the arbitration." *Mumith v Muhith*, unpublished decision of the Court of Appeals, issued June 14, 2018 (Docket No. 337845), p 3.[2] "Questions of law are not primarily or even ordinarily within the province of arbitration" because, "[f]or the most part, arbitrators are concerned with factfinding." *Detroit Auto Inter-Ins Exch v Gavin*, 416 Mich 407, 444; 331 NW2d 418 (1982). At the same time, "[a] court may not review an arbitrator's factual findings or decision on the merits." *Fette v Peters Const Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015) (cleaned up). Even where an arbitration award is against the great weight of the evidence or unsupported by substantial evidence, "this Court would be precluded from vacating the award." *Id*. at 544-545. This is because it is "simply outside the province of the courts to engage in a fact-intensive review" of an arbitrator's decision. *Washington*, 283 Mich App at 675. Accordingly, "an allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991).

The corporate defendants primarily argue that the arbitrator somehow contradicted the circuit court's order compelling the individual defendants to participate in the arbitration. We

---

[2] Although unpublished opinions of this Court are not binding precedent, they may be considered instructive or persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

disagree that the arbitrator contradicted the circuit court's order. After the circuit court compelled the individual defendants to participate in arbitration, the arbitrator included them in the proceedings and communicated with their counsel to explore whether additional time was needed to accommodate any need on their part for additional discovery. The individual defendants were present on the day of the scheduled arbitration hearing and participated in prehearing proceedings. At that time, plaintiff moved to dismiss all remaining arbitrable claims against the individual defendants, and the arbitrator granted that motion. There was nothing in the circuit court's order restricting the arbitrator from considering plaintiff's motion to dismiss some of its claims for relief, and the corporate defendants cite no authority for the proposition that the arbitrator improperly granted the motion to withdraw or dismiss those claims. The arbitrator properly treated the individual defendants as parties to the arbitration proceedings until plaintiff voluntarily moved to dismiss its claims against them. The arbitrator's power to grant such a motion was not restricted by the circuit court's order compelling the individual defendants to participate in arbitration. They participated in those proceedings until the plaintiff withdrew its claims against them.

The corporate defendants also briefly assert that the arbitrator exceeded his powers by failing to follow the arbitration clause of the parties' contract and failing to follow the rules of the AAA. The corporate defendants' arguments in this regard are extremely brief. First, the corporate defendants argue that the arbitrator violated the parties' contract by questioning whether it had jurisdiction over the individual defendants. The corporate defendants point to the language of the contractual arbitration clause stating that "questions regarding the authority of the persons who have executed this agreement" would be settled by arbitration. This argument, however, ignores the fact that the arbitrator did not dismiss the individual defendants from the arbitration based on a conclusion that he lacked jurisdiction over claims against them—he granted plaintiff's motion to voluntarily dismiss its claims against them. Because the corporate defendants do not adequately explain how this violates the parties' contract, they are not entitled to relief on this basis.

Finally, the corporate defendants argue that the parties' contract specified that the arbitration "shall be held in accordance with the then prevailing commercial arbitration rules of the AAA." The corporate defendants complain that AAA rules disallow use of expedited procedures in cases involving more than two parties. The corporate defendants therefore argue that, once the circuit court compelled the individual defendants to participate in the arbitration proceedings, the expedited procedures could no longer apply. The corporate defendants complain that the arbitrator nonetheless continued to apply the expedited procedures between November 5 and December 6, 2017.

This argument is similarly without merit. The arbitrator clearly "requested that the parties advise him as to whether the matter should be removed from the expedited proceedings track." The corporate defendants have failed to demonstrate that they responded by requesting removal from the expedited proceedings track. And, in any event, even if the arbitrator erred in declining to grant an adjournment, we cannot conclude that, "but for such error, a substantially different award must have been made." *TSP Services*, __ Mich App at __, slip op at 3.

-12-

Affirmed.  Plaintiff, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle